NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2649
_____

LORRIE E. WHITFIELD, individually and as a
parent and natural guardian of A.R., a minor; A. R., a minor,

Appellants

v.

NOTRE DAME MIDDLE SCHOOL; SISTER MONICA T. SICILIA;
PHILIP H. MEEHAN; THE VERY REVEREND THOMAS MCLAUGHLIN, VF;
MONSIGNOR JOHN A. BERGAMO; REVEREND JOHN C. LAMBERT;
REVEREND WILLIAM J. MCCAWLEY; JOSEPH G. CASCIANO;
JEFFREY LYONS; KERRY HARTSHORN; BISHOP JOSEPH MARTINO;
DIOCESE OF SCRANTON
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 07-cv-02130)
District Judge: Honorable A. Richard Caputo
_____

Submitted Under Third Circuit LAR 34.1(a)
January 6, 2011

Before: AMBRO, FISHER, *Circuit Judges*, and SÁNCHEZ,[*] *District Judge.*

(Filed: January 12, 2011)

_____

[*]The Honorable Juan R. Sánchez, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

_____

FISHER, *Circuit Judge*.

A.R. and her mother, Lorrie Whitfield, filed suit in November 2007, alleging that

Notre Dame Middle School, et al., racially discriminated against A.R. in violation of

(1) Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.*;

(2) Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*;

and (3) 42 U.S.C. § 1981.[1]  The District Court entered summary judgment in favor of

Defendants on all claims, and A.R. and Whitfield appealed.  For the reasons stated below,

we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and

legal history of the case.  Therefore, we will set forth only those facts necessary to our

analysis.

A.R., an African-American female student, attended Notre Dame Middle School

("NDMS") in East Stroudsburg, Pennsylvania.  A.R.'s claims arose from a series of

events that occurred at NDMS.

_____

[1] A.R. and Lorrie Whitfield named the following parties in their complaint: Notre Dame Middle School, Sister Monica T. Sicilia, Philip H. Meehan, The Very Reverend Thomas McLaughlin, VF, Monsignor John A. Bergamo, Reverend John C. Lambert, Reverend William J. McCawley, Joseph G. Casciano, Jeffrey Lyons, Kerry Hartshorn, Bishop Joseph Martino, and the Diocese of Scranton (collectively, "Defendants").

The first incident occurred on May 19, 2006, while A.R. was eating lunch. A Caucasian female student, M.W., sat next to her, slapped her, spit in her face, and said A.R. did not belong at NDMS. A.R. informed a teacher. As punishment for the incident, M.W. apologized in a note to A.R. and served a one-day in-school suspension.

A.R.'s mother, Whitfield, was unsatisfied with the school's response and believed that the school's policy called for greater punishment. Therefore, she met with the principal of NDMS. During the meeting, the principal informed Whitfield that A.R. previously had told two classmates that M.W.'s family was racist. Whitfield denied that A.R. made the statements. Whitfield also asked that the school implement a racial sensitivity program. NDMS submitted evidence that the program was implemented in the curriculum shortly after the meeting, which Whitfield does not refute. The record is unclear as to the extent of the implementation.

The second incident occurred on April 30, 2007. As A.R. sat in class, a student sitting next to her exclaimed that a third student, D.V., had not showered and smelled bad. D.V. explained to A.R. that "[i]f I didn't take a shower I would look like you[,] black." (App. at 197.) The three students met with the principal the following day and shook hands. D.V. apologized for the comment.

The third incident occurred on May 7, 2007. A.R. was approached by several female classmates as she stood waiting for the school bus. J.P., a mixed-race or African-American female student, asked if she could touch A.R.'s arm and then scratched A.R.

3

A.R. went to the emergency room and was treated for an abrasion. J.P. received a two-day out-of-school suspension as punishment.

A.R. was also involved in other incidents at NDMS. For example, in May 2006, several students intimidated A.R. and accused her of saying that M.W.'s family was racist. In September 2007, A.R. told her teacher that another student had attempted to throw her book bag out of a window. In October 2007, Whitfield complained about a comment that a religion teacher made to A.R., requesting that she not tell lies. Also in October 2007, A.R. reported to a teacher that a Hispanic classmate spit on her book bag. The student apologized the next day and served a detention. In November 2007, a compilation of student assignments on "diversity metaphors" was sent home to parents, but A.R.'s contribution was not included in the compilation. In December 2007, A.R. reported to a teacher that she found chewing gum stuck between books in her locker. Finally, in January 2008, A.R. was given a detention for failing to return a parent-signed exam that was inadvertently left at home. A.R. transferred to a different school following the 2007-2008 school year.

A.R. and Whitfield (collectively, "Plaintiffs") filed an Amended Complaint on January 24, 2008, against Defendants. The District Court granted summary judgment in favor of Defendants on all counts. First, it held that there was no individual liability under Title VI. Moreover, Plaintiffs did not assert a valid claim under Title VI for a racially hostile environment because (a) the racial harassment was not so severe, pervasive or objectively offensive that it deprived African-American students of access to

4

the educational opportunities provided by NDMS, and (b) NDMS did not act with deliberate indifference to the harassment. In addition, Plaintiffs did not assert a valid claim for retaliation under Title VI because there was no evidence that NDMS subjected A.R. to adverse action. Second, the District Court held that Plaintiffs' Title IX claim failed as a matter of law because the complaint did not contain an allegation of sex discrimination. Third, the District Court held that Plaintiffs' § 1981 claim failed as a matter of law because the record did not reflect purposeful discrimination on the part of Defendants. Plaintiffs timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo, applying the same standard the District Court applied. *Alcoa, Inc. v. United States*, 509 F.3d 173, 175 (3d Cir. 2007). Fed. R. Civ. P. 56(c) provides that summary judgment may be granted if, based on the record and drawing all inferences in favor of the non-moving party, the movant is entitled to judgment as a matter of law. *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). We may affirm the order of the District Court on any grounds supported by the record. *Id*.

## III.

Plaintiffs argue that the District Court's grant of summary judgment was improper as to each of the three counts. For substantially the same reasons stated in the thorough opinion issued by the District Court, we conclude that, even drawing all permissible

5

factual inferences in Plaintiffs' favor, summary judgment was appropriate as to each claim.  Nevertheless, we will address each contention in turn.

## A.  Title VI

On appeal, Plaintiffs advance three arguments under Title VI.  First, they argue that there is individual liability under Title VI.  Second, they argue that NDMS created a racially hostile environment in violation of Title VI.  Third, they argue that NDMS retaliated against A.R., in violation of Title VI.  We will address each argument in turn.

### 1.  Individual Liability

Title VI provides that:  "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Plaintiffs argue that they may recover from individual defendants under Title VI.  This argument is contrary to law.

Individual liability may not be asserted under Title VI.  *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003); *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1356 (6th Cir. 1996).  Accordingly, the District Court properly granted Defendants' motion for summary judgment as to all individual Defendants under Title VI.

### 2.  Racially Hostile Environment

Title VI prohibits intentional discrimination based on race in any program that receives federal funding.  *See* 42 U.S.C. § 2000d; *Alexander v. Sandoval*, 532 U.S. 275,

6

282-83 (2001). Specifically, a plaintiff may sue a school for money damages for its failure to address a racially hostile environment. *See Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 206 n.5 (3d Cir. 2001) (suggesting that Title VI hostile environment claims may lie); *see also Bryant v. Indep. Sch. Dist. No. I-38*, 334 F.3d 928, 934 (10th Cir. 2003); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033-34 (9th Cir. 1998). A plaintiff may recover for alleged "severe, pervasive, and objectively offensive" student-on-student harassment if the school "acts with deliberate indifference to known acts of harassment." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999).[2] Therefore, a school may only be held liable for a Title VI claim of student-on-student racial discrimination when the school's response is "clearly unreasonable in light of the known circumstances." *Id*. at 648. A district court may conclude on a motion for summary judgment that a "response [is] not 'clearly unreasonable' as a matter of law." *Id*. at 649. Plaintiffs argue that they have successfully established a claim for hostile environment. This argument is unpersuasive.

Actionable harassment deprives the victim of equal access to the school's educational opportunities and has a "systemic effect on educational programs or activities." *Id*. at 653. The harassment must be "severe, pervasive, and objectively offensive," and rise above the level of "simple acts of teasing and name-calling among school children . . . even where these comments target differences in [race]." *Id*. at 652.

---

[2] *Davis* involved alleged sexual harassment in violation of Title IX. We construe Titles VI and IX similarly because they use parallel language. *See Barnes v. Gorman*,

The District Court exercised great care in reviewing the record and properly concluded that the combined actions and incidents experienced by A.R. did "not rise to the level of severe and pervasive harassment having a systemic effect on an African-American student's access to education at NDMS." (District Court Order at 17.)

Moreover, even assuming Plaintiffs established systemic and pervasive discrimination, the District Court properly concluded that NDMS did not act with deliberate indifference. "[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648. Indeed, school administrators are deemed to act with deliberate indifference "only where the [school's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id*. Here, the school administrators disciplined children following several incidents and implemented a racial sensitivity program. We therefore conclude that NDMS did not act with deliberate indifference. Accordingly, Plaintiffs' Title VI hostile environment claim fails as a matter of law.

### 3. Retaliation

Title VI also supports a private cause of action for retaliation. *See Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003). To establish retaliation, a plaintiff must show that: (1) she was engaging in a protected activity; (2) the funded entity subjected her to an adverse action after or contemporaneously with the protected activity; and (3) a causal link between the adverse action and the protected activity. *Id*. Plaintiffs point to several

536 U.S. 181, 185 (2002).

8

instances of allegedly retaliatory action, including the intimidating statements and false accusations made by A.R.'s classmates, as well as her religion teacher's comment that she should not tell lies. The District Court properly concluded that the instances cited by Plaintiffs do not establish that the funded entity, NDMS, subjected A.R. to an adverse action. Therefore, Plaintiffs' retaliation claim fails as a matter of law.

## B. Title IX

Title IX makes it unlawful for a federally funded entity to discriminate on the basis of sex. 20 U.S.C. § 1681(a). The District Court properly concluded that Plaintiffs complain of race discrimination rather than sex discrimination. Indeed, there is no evidence of sex discrimination in the record. Therefore, Plaintiffs' claim under Title IX fails as a matter of law.

## C. 42 U.S.C. § 1981

To establish a claim under §1981, a plaintiff must show that: (1) she belongs to a racial minority; (2) the defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute.[3]

---

[3] Section 1981 provides, in relevant part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

9

*Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002). Plaintiffs assert that the District Court erred in finding as a matter of law that NDMS did not intend to discriminate. Specifically, Plaintiffs argue that Defendants' failure to adequately respond to the incidents amounted to intentional discrimination. This argument fails.

Defendants' alleged failure to act does not sustain a finding of purposeful discrimination. Indeed, the District Court properly concluded that there is no evidence of Defendants' purposeful discrimination in the record. Accordingly, Plaintiffs' § 1981 claim fails as a matter of law.

## IV.

For the foregoing reasons, we will affirm the order of the District Court.